Donald BENNETT, Plaintiff,

v.

**VILLAGE OF OAK PARK, a municipal corporation, Keith Bergstrom, Raymond Heise, Brian Slowiak & David Chapman, Defendants.**

No. 88 C 2018.

United States District Court,
N.D. Illinois, E.D.

Oct. 25, 1990.

Michael A. Johnson, Michael Johnson & Assoc. and Richard Baker, Mauck & Baker, Chicago, Ill., for plaintiff.

John B. Murphey, Rosenthal, Murphey, Coblentz & Janega and Adam Bourgeois, Jr., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

HOLDERMAN, District Judge:

Plaintiff Donald Bennett brought this action under 42 U.S.C. § 1983 against defendants Village of Oak Park (the "Village"), Village Police Chief Keith Bergstrom, Village Attorney Raymond Heise, and Police Officers David Chapman and Brian Slowiak alleging that defendants subjected plaintiff to selective prosecution as well as threats and harassment in violation of plaintiff's constitutionally protected rights of free speech, due process, and equal protection. Defendants Chapman and Slowiak (hereinafter "defendants") move for summary judgment pursuant to Federal Rule of Civil Procedure 56.

### FACTS

According to defendants' 12(*l*) statement,[1] plaintiff Bennett was the sole proprietor of a gas station in Oak Park, Illinois from 1969 to June, 1987. On May 7, 1985, he began operating a food mart in conjunction with his gas station.

After several robberies at his gas station in December, 1980, Bennett began wearing a handgun while at the gas station. (12(*l*) Statement, ¶ 11.) In November, 1981, Bennett's decision to wear a handgun in full view at the gas station became the focus of local and national media attention. (*Id.* at ¶ 12.) Within two weeks of this attention, Village officials contacted Bennett to inquire about his carrying of the handgun, and two detectives visited Bennett to inform him that he would be arrested should he continue to wear the gun. (Bennett Aff., p. 89.) Initially, Bennett complied, but soon he resumed wearing the gun. (*Id.* at 90.)

In April, 1984, the Village enacted an ordinance prohibiting the private possession of handguns in the Village. (12(*l*) Statement, ¶ 13.) In March, 1986, Ben-

---

1. According to Local Rule 12(m), each party opposing a motion for summary judgement must serve and file a response to the moving party's statement of material undisputed facts required by Local Rule 12(*l*). Rule 12(m) states that any material facts set forth in the 12(*l*) statement are deemed admitted unless controverted by the nonmoving party. Plaintiff Bennett has failed to file a 12(m) statement. Thus, the court deems admitted all material facts set forth in defendants' 12(*l*) statement.

nett's gas station was robbed. Bennett was arrested and prosecuted for violating the Handgun Ordinance after firing his handgun at the assailants. Bennett was acquitted following a trial on October 21, 1986. (*Id.* at ¶¶ 13–14.) His prosecution by and conflicts with the Village received substantial media coverage. (Mem. in Opposition, pp. 5–6.)

The day after the acquittal, defendant Village Police Officer Brian Slowiak appeared in uniform at Bennett's station and asked Bennett if he could speak to him in Bennett's back office. (Bennett Aff., pp. 146–47.) After the two men entered the back office, Slowiak closed the door and told Bennett that he had a problem with Bennett's comments to the media about the Oak Park Police Department. (Slowiak Aff., p. 34.) Slowiak wanted the public to realize that uniformed police officers had nothing to do with Bennett's arrest. (*Id.*) According to Slowiak, Bennett told him he never had any problem with uniformed officers, and then the conversation ended. (*Id.* at 34–35.) According to Bennett, Slowiak told him that his comments to the newspapers were making the police officers look bad, and then said, "So why don't you just quit talking to the media? Keep your mouth shut and we'll all be better off." (Bennett Aff., pp. 147–48.) After Bennett told Slowiak that the press misquoted him, Bennett claims that Slowiak said, "I'm just warning you that you better keep your mouth shut and quit talking to them and we'll be better off, too." (*Id.*)

In January, 1987, Bennett and Village President Clifford Osborn got into a heated exchange at a Village meeting. (Zangrelli Aff., pp. 59–62, 67–68.) Village Trustee Patricia Andrews, the wife of defendant Officer David Chapman, entered into the exchange on Osborn's behalf. (Mem. in Opposition, Exhibit 6.)

On February 23, 1987, defendant Anthony Frencher stopped at Bennett's gas station. Frencher and Bennett got into a dispute over the refund of twenty-five cents that Frencher claimed to have lost in the station's air pump. (Chapman Aff., p. 52.) When the argument escalated and Bennett refused to give Frencher twenty-five cents, Bennett pulled out a gun. Frencher left the station and called the police. (*Id.* at 38–39.)

Officer Osborn was in uniform on patrol when he responded to a radio call regarding a "man with a gun" at Bennett's gas station. (*Id.* at 34.) Chapman arrived at the station where he interviewed Frencher and Bennett. (*Id.* at 38, 47.) He thereupon arrested Bennett for aggravated assault, and did not arrest Frencher. (Bennett Aff., p. 178.)

## DISCUSSION

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In ruling on a motion for summary judgment the evidence of the non-movant must be believed, and all justifiable inferences must be drawn in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). There is no issue for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511. Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

## I. COUNT I: EQUAL PROTECTION AND DUE PROCESS CLAIMS

In Count I, Bennett alleges that all defendants, including Chapman and Slowiak, denied Bennett his First Amendment, Equal Protection, and Due Process rights in retaliation for the exercise of Bennett's constitutional rights. In its memorandum opinion and order of October 20, 1988, this court found that Bennett's Equal Protection and Due Process claims were not adequately set forth in his complaint. After

reviewing Bennett's Second Amended Complaint, the court believes that, but for the allegations of selective prosecution set out in Count II and discussed below, the amended complaint sets out no new allegations to support these claims. Accordingly, the assertions of Equal Protection and Due Process violations in Count I are, once again, dismissed as to all the defendants.

## II. COUNT I: FIRST AMENDMENT CLAIMS

### A. *Officer Chapman*

In Count I, Bennett alleges that Chapman violated Bennett's First Amendment right of expression by retaliating against Bennett for his views about handgun control and for statements he made to the media and at a village meeting.

■ State action designed to retaliate against political expression strikes at the heart of the First Amendment. *Gibson v. United States,* 781 F.2d 1334, 1338 (9th Cir.1986) (citing *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972)). Since there is no justification for harassing people for exercising their constitutional rights, the effect of their conduct on freedom of speech need not be great in order to be actionable. *Bart v. Telford,* 677 F.2d 622, 625 (7th Cir.1982). If Chapman's alleged acts were done in retaliation for comments protected by the First Amendment, they would constitute deprivations of Bennett's constitutional rights. *See Rakovich v. Wade,* 850 F.2d 1180, 1189 (7th Cir.1988).

■ In a Section 1983 action for retaliation, a plaintiff has the burden of persuasion to establish by a preponderance of the evidence that the substantial or motivating factor for the defendant's conduct was retaliation. *Rakovich,* 850 F.2d at 1189. *See Mt. Healthy City Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). The plaintiff does not carry the burden by showing that his protected activity played some minor role in the defendant's conduct. However, he need not show that the particular purpose was the dominant or primary one either. *Rakovich,* 850 F.2d at 1189–90. Instead, the plaintiff must show that the retaliatory motive was the decisive factor, in the absence of which the opposite decision would have been reached. *Id.* at 1190.

■ Bennett asserts that Chapman's involvement in the retaliation effort can be established through circumstantial evidence. (Def.Mem. in Opposition, pp. 12–13.) Most of this evidence, such as run-ins between Bennett and the Village administration, Officer Slowiak's threat to Bennett, and a rumor that Village President Osborn was out to get Bennett (*Id.* at 13), are only relevant to the existence of a scheme or conspiracy to harass Bennett. Bennett, however, provides no evidence that Chapman had any involvement in these incidents. Without such involvement, this evidence fails to establish any retaliatory motive.

■ Other evidence presented by Bennett regarding Chapman's alleged retaliatory motive includes a heated exchange between Bennett and Village Trustee Patricia Andrews, who was Chapman's wife. (*Id.*) According to defendants' 12*l* statement, Andrews never expressed any opinions to Chapman regarding Bennett. (Chapman Aff., p. 21.) In fact, Chapman did not even know that Andrews knew Bennett. (*Id.*) Bennett concedes that his belief that Chapman was influenced by Andrews is based purely on speculation. (Bennett Aff., p. 206.) Such speculation is insufficient to raise a genuine issue of material fact that Chapman was motivated by the animosity between Andrews and Bennett.

■ Finally, Bennett alleges that Chapman's arrest of Bennett during the "Frencher" incident and his refusal to arrest Frencher is evidence of Chapman's retaliatory motive. It is undisputed that Chapman was called to the scene of the "Frencher" incident by chance. It is also undisputed that Chapman was told over his radio that there was a man with a gun at the gas station. (Chapman Aff., p. 32.) Once at the scene, Frencher and Bennett told Chapman that Bennett pulled a gun on Frencher in the course of a dispute over a twenty-five cent purchase. (*Id.* at 38–39, 47) Thus, Chapman clearly had reason to believe that the serious crime of aggrava-

ted assault had been committed by Bennett. His decision to pursue the arrest of Bennett, and to forego arresting Frencher for the *attempted* theft of goods of *negligible* value was, at best, a sensible law enforcement avenue to take. At worst, Chapman's exercise of discretion does not establish that retaliation against Bennett's protected speech activities was a decisive factor here.

Of course, all the evidence must be considered as a whole in determining the degree to which retaliation was the decisive reason for Chapman's behavior. Read together, in the light most favorable to Bennett, no reasonable juror could find that retaliation was the decisive factor which motivated Chapman's decision to arrest Bennett and forego arresting Frencher. Accordingly, Chapman's motion for summary judgement on Count I is granted.

### B. *Officer Slowiak*

Plaintiff alleges that his freedom of expression rights were violated when Slowiak threatened plaintiff concerning any future comments he may make to the media.

#### 1. *Qualified Immunity*

Defendant Slowiak argues that he is entitled to summary judgement based on qualified immunity. Under the doctrine of qualified immunity,

> public officials performing discretionary functions are protected against suits for damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. (Citations omitted.) Thus, the general rule of qualified immunity is intended to provide government officials with the ability reasonably to anticipate when their conduct may give rise to liability for damages. (Citations omitted.) Correspondingly, the inherent purpose of qualified immunity is to protect government officials from non-meritorious lawsuits.

*Auriemma v. Rice,* 910 F.2d 1449, 1452 (7th Cir.1990).

■ A qualified immunity analysis entails a purely objective inquiry to determine whether at the time of the alleged illegal act, the right asserted by the plaintiff was clearly established in the particular factual context presented. *Id.* at 1452–53. The court must be careful to properly characterize with particularity the right in question. *Id.* at 1455. The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Id.*

■ In this case, the question is whether a reasonable police officer in 1986 would have known that he would be violating an individual's rights by appearing in uniform at the individual's place of business, requesting and having a private discussion behind a closed door in the individual's office, objecting to comments the individual had been making to the media about the local police, and telling the individual to "quit talking to the media" and to "keep [his] mouth shut." (12*l* Statement.)

In 1972, the United States Supreme Court stated in *Laird v. Tatum* that a threat of specific future harm creates an unconstitutional chilling effect upon the exercise of one's First Amendment rights. 408 U.S. 1, 92 S.Ct. 2318, 2325–26, 33 L.Ed.2d 154 (1972). The primary purpose of Slowiak's meeting with Bennett was to discourage him from speaking to the media by telling him that he would be better off if he quit doing so. There was sufficient specificity of future harm in Slowiak's threat. He made clear what activity by Bennett would result in unpleasant consequences. He created an intimidating atmosphere, consisting of a private discussion in a closed office with a police officer in uniform concerning his displeasure with comments Bennett made to the media concerning the police.

Slowiak argues that he never threatened Bennett with any specific harmful action. (Reply, p. 4.) It defies common sense for a threat of "specific" future harm to require a description of the specific fate, such as physical violence or arrest, that the victim would suffer should he ignore the threat and exercise his rights. Given the circumstances surrounding this encounter, the court finds no basis for finding that a reasonable police officer in these circumstances would believe his threat would be considered proper simply by not informing

the victim what specific future harm he may encounter should he not comply with the officer's warning.

In summary, the court believes that a reasonable police officer in 1986 would have concluded that a person of ordinary firmness would feel substantially threatened by the statements and circumstances present here, thereby violating the First Amendment rights of that person. Therefore, the court rejects defendant Slowiak's claim of qualified immunity.[2]

### 2. Chilling Effect

 Even without the defense of qualified immunity, Slowiak contends that his comments to Bennett did not violate Bennett's First Amendment right to free speech. Slowiak argues that his comments to Bennett constituted a mere threat which does not rise to the level of a constitutional violation. (Def.Mem. in Support, p. 7.) In order to make a Section 1983 claim, it is adequate to allege specific present objective harm or a threat of specific future harm, but not to allege a subjective chill. *Laird v. Tatum*, 92 S.Ct. at 2325–26.

 Here, Bennett was confronted with a direct threat from Officer Slowiak concerning his continued exercise of his protected right. As discussed above, it is no less reason to consider Slowiak's comments as an "immediate threat of concrete, harmful action" simply because Slowiak's intimidating comments did not specify the particular consequences that Bennett would face should he speak to the press again. *See United Presbyterian Church v. Reagan*, 738 F.2d 1375, 1380 (D.C.Cir.1984). Bennett has alleged a discrete act of police harassment and intimidation directed solely at silencing his remarks to the media about the Oak Park police. *See Gibson*, 781 F.2d at 1338. Looking at the circumstances of the meeting as a whole in a light most favorable to the plaintiff, the court finds that there is a genuine issue of material fact whether Bennett's meeting with Slowiak constituted a threat of specific future harm.

 Slowiak also contends that his conduct did not have a chilling effect on Bennett. (Def.Mem. in Support, p. 9.) In order to sustain a Section 1983 action based upon the chilling effect on one's freedom of speech, the plaintiff must actually suffer the chilling effects of the improper conduct. *Laird*, 92 S.Ct. at 2325–26, n. 7. Slowiak argues that since Bennett participated in approximately thirty media interviews without rejecting any interview requests subsequent to his meeting with Slowiak, Bennett was in no way chilled in the exercise of his First Amendment rights. (Def.Mem. in Support, p. 6.) However, Bennett claims that because of Slowiak's threat, he no longer made comments to the media concerning the conduct of the Oak Park police. This is not to be dismissed as an immaterial chilling effect given the significant involvement of the police in the affairs about which Bennett was being interviewed. Thus, there is a genuine issue of material fact whether Slowiak's warnings to Bennett actually had a chilling effect on Bennett's protected activity. *See also Alliance to End Repression v. City of Chicago*, 742 F.2d 1007, 1009 (7th Cir.1984) (*Laird* requirement that alleged illegal activity must have an actual chilling effect on plaintiffs was fulfilled by allegations that the goal and consequence of the FBI's investigations were to harass and intimidate the plaintiffs).

## III. COUNT II: SELECTIVE PROSECUTION

 In Count II, Bennett claims that he was the victim of selective prosecution. Selective enforcement of a statute may violate equal protection. *United States Labor Party v. Oremus*, 619 F.2d 683, 690 (7th Cir.1980). To set forth such a claim, Bennett must allege facts to show that (1) others similarly situated have generally not been prosecuted and (2) the discriminatory selection was based on impermissible considerations such as race, religion, or the desire to prevent his exercise

---

**2.** Slowiak's contention that Bennett was not actually intimidated is irrelevant to whether a reasonable police officer would know that his conduct was violating Bennett's rights. Also irrelevant to a reasonable police officer's state of mind in October, 1986 are cases relied upon by Slowiak which were decided after the date of the alleged incident.

**1336**

of constitutional rights. *Id.* at 691. Bennett's Second Amended Complaint does allege that others similarly situated have not been prosecuted. The only impermissible basis that Bennett alleges the defendants used is the prevention of his exercising his freedom of expression. Therefore, the merit of Bennett's selective prosecution claim depends upon the merit of his First Amendment claims. Accordingly, for the reasons stated above in the court's First Amendment discussion, the court must grant summary judgement on Count II for defendant David Chapman and deny summary judgement on Count II for defendant Brian Slowiak.

CONCLUSION

For the reasons stated in this memorandum opinion and order, defendant David Chapman's motion for summary judgement on Counts I and II is GRANTED. Chapman is DISMISSED from the entire case. Defendant Brian Slowiak's motion for summary judgement on Counts I and II is DENIED. In addition, plaintiff's Due Process and Equal Protection claims in Count I are DISMISSED as to all defendants.

The parties are urged to discuss settlement of this case. The case is set for further status on November 2, 1990 at 10:00 a.m.