**Donald BENNETT, Plaintiff,**

**v.**

**VILLAGE OF OAK PARK, a municipal corporation, Keith Bergstrom, Raymond Heise, Brian Slowiak, & David Chapman, Defendants.**

**No. 88 C 2018.**

United States District Court,
N.D. Illinois, E.D.

Aug. 13, 1991.

**1036**

John B. Murphey, Rosenthal, Murphey, Coblentz & Janega, Chicago, Ill., for defendants.

Richard C. Baker, Mauck, Bellande, Baker & O'Connell, Chicago, Ill., for plaintiff.

## MEMORANDUM OPINION AND ORDER

HOLDERMAN, District Judge:

Plaintiff Donald Bennett brought this action under 42 U.S.C. § 1983 against defendants Village of Oak Park (the "Village") and several Village officials and police officers alleging that defendants retaliated against Bennett, including selectively prosecuting him, in violation of Bennett's constitutionally protected right to freedom of expression. Defendants Village of Oak Park, Police Chief Keith Bergstrom, and Village Attorney Raymond Heise (the "defendants") move for summary judgment pursuant to Federal Rule of Civil Procedure 56.[1]

The general facts of this case have been presented in this court's memorandum opinion of October 25, 1990, *see Bennett v. Village of Oak Park*, 748 F.Supp. 1329, 1331–32 (1990), and specifically relevant facts are recounted below. Count I alleges that defendants took certain actions in retaliation for Bennett's exercise of his First Amendment right of expression. (Amended Complaint, ¶ 58.) In Count II, Bennett alleges that defendants selectively prosecuted him in retaliation for exercising his First Amendment rights. (Amended Complaint, Count II, ¶ 24.) For the reasons set forth herein, defendants' motion for summary judgment is granted.[2]

## DISCUSSION

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In ruling on a motion for summary judgment the evidence of the non-movant must be believed, and all justifiable inferences must be drawn in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

---

1. Village Attorney Raymond Heise is being sued in his official capacity only. (Second Amended Complaint, ¶ 9.) Police Chief Keith Bergstrom is being sued in both his official and individual capacities. (*Id.*) A suit against a city official in his or her official capacity is in reality a suit against the city. *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1238 (7th Cir.1986). The court believes, and Bennett does not dispute, that the success of these official capacity claims depends upon the success of Bennett's claim against the Village of Oak Park.

2. Defendants David Chapman and Brian Slowiak, Village police officers, do not join in the summary judgment motion currently before the court. In a memorandum opinion and order of October 25, 1990, this court granted Chapman's motion for summary judgment and denied Slowiak's motion for summary judgment. *See Bennett v. Village of Oak Park*, 748 F.Supp. 1329 (N.D.Ill.1990).

## I. COUNT I

In Count I Bennett alleges that defendants violated his First Amendment right of expression by retaliating against him for his views on handgun control and for statements he made to the media.

Bennett sets forth activities undertaken by defendants which he believes establishes that defendants were retaliating against Bennett's expression. These activities include commencement of surveillance on Bennett, opening a "notorious persons file" on Bennett, and establishing a standing order to arrest Bennett on handgun charges. (Mem. in Opposition, pp. 11–12.) Bennett also sets forth evidence indicating the high priority that defendants placed on arresting Bennett for violating the Handgun Ordinance. (*Id.* at 12–13.)

These allegedly retaliatory acts were steps that led to the ultimate prosecution of Bennett for violating the Handgun Ordinance. When a municipality suspects that certain individuals are violating the law under circumstances in which retaliation is not an issue, the court does not believe, and Bennett does not dispute, that there is anything improper about the municipality taking investigatory steps such as the ones alleged here prior to making an arrest. Thus, the propriety of these pre-prosecution activities in this case depends upon the propriety of the prosecution of Bennett. If the evidence does not support Bennett's claim in Count II that he was selectively prosecuted for retaliatory purposes, then Bennett has also failed to show that the pre-prosecution activities alleged in Count I were substantially motivated by retaliatory purposes. *See Rakovich v. Wade*, 850 F.2d 1180, 1189 (7th Cir.1988).

## II. COUNT II

Count II of Bennett's complaint is a claim that defendants selectively prosecuted Bennett in retaliation for Bennett's expressive activities.

The factual basis for this claim is not in dispute. As stated above, defendants undertook certain pre-arrest activities including commencement of surveillance on Bennett, opening a "notorious persons file" on Bennett, and establishing a standing order to arrest Bennett on handgun charges. On or about March 26, 1986, Bennett's gas station was robbed at gunpoint. After the robbers fled the station, Bennett ran out the door, grabbed his handgun out of his truck, and ran towards an alley located just east of the gas station where he had seen the offenders flee. One of the offenders turned, looked down the alley, saw Bennett, and fired a shot at him. The offenders jumped in a car and Bennett stepped out into the alley and fired four or five shots at the vehicle. Bennett then telephoned "911" to report the robbery. Oak Park police arrived at the scene and investigated the robbery. Bennett told an officers that he had fired shots at the escaping vehicle with his handgun. Approximately two hours later, the officer returned and advised Bennett that he would have to take the handgun to the police station. Bennett gave him the handgun. (Plaintiff's 12(n) Response, ¶¶ 16–18.)

Later that day, Chief Bergstrom convened a meeting with Village Attorney Heise and other officers to review the Bennett incident. At the meeting, Heise opined that there was probable cause to believe that Bennett violated the Handgun Ordinance and, consequently, Heise personally authorized the charge against Bennett. Bergstrom ordered his arrest after deciding that both factual and legal grounds to arrest existed. Bergstrom concluded that Bennett "in effect was acting as a one-man posse trying to apprehend them, so self-defense was not the issue...." (*Id.* at ¶¶ 19–22.)

Between Bennett's arrest in March 1986 and his trial in October 1986, it was the Village's position that it would agree to dispose of the case by nonsuiting the charge relating to discharging a weapon within the Village, entering a one-month supervision order on the handgun charge, imposing no fine, and ordering confiscation of the weapon. Bennett rejected this offer and the case proceeded to trial. On October 21, 1986, following a trial on the merits, Bennett was acquitted on the Handgun Or-

dinance charge stemming from the March 26, 1986 incident. (*Id.* at ¶¶ 25–26.)

■ The government retains broad discretion as to whom to prosecute. *Wayte v. United States*, 470 U.S. 598, 105 S.Ct. 1524, 1531, 84 L.Ed.2d 547 (1985). So long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute generally rests entirely in the prosecutor's discretion. *Id.* Although prosecutorial discretion is broad, it is not unfettered. *Id.* 105 S.Ct. at 1531. Selectivity in the enforcement of criminal laws is subject to constitutional constraints. *Id.*

■ In order to make a *prima facie* case for selective prosecution, one must establish initially that he was singled out for prosecution while others similarly situated were not prosecuted, and secondly, that the alleged selective decision to prosecute him was based on such impermissible grounds as race, religion, or exercise of constitutional rights. *Jarrett v. United States*, 822 F.2d 1438, 1443 (7th Cir.1987).

■ Bennett claims that no other person investigated by the Oak Park Police Department for violating the Handgun Ordinance who used a handgun in self-defense has been prosecuted by the Village for violating the Ordinance. (Complaint, ¶ 25.) Additionally, Bennett asserts that the selective prosecution was based on the impermissible purpose of retaliating against Bennett for exercising his First Amendment right to freedom of expression. (*Id.*, ¶¶ 24, 31.)

Bennett has failed to produce sufficient evidence to show that he was singled out for prosecution under the Handgun Ordinance while others similarly situated were not prosecuted. Bennett presents several other cases of Handgun Ordinance violations in the Village in which no prosecutorial action was taken by the Village. Most of the cases cited by Bennett were clear and obvious cases of self-defense. In one case, the Village believed that, having already brought charges of murder, aggravated assault, and unlawful use of a weapon, charging the handgun owner with violating

the Handgun Ordinance would have been superfluous. In another case, the handgun owner was required to turn his gun over to someone outside of the Village.

Another case cited by Bennett involved a suicide in which the victim used his father's gun. The Village did not prosecute the father because Bergstrom believed the father had suffered enough due to the suicide of his son and because the father agreed to immediately remove the handgun from the Village limits. Another case involved a security guard who did not fire his gun and whose actions may have fallen under an exception to the Handgun Ordinance.

The cases cited by Bennett are inapposite to Bennett's situation and provide no support for his allegations of dissimilar treatment. It was reasonable for the Village to view Bennett's use of his handgun on March 26, 1986 as an attempt to apprehend the offenders. The offenders were fleeing the scene of the robbery at the time Bennett used his handgun, so self-defense was an improbable motive. Also, Bennett fired his gun numerous times, in contrast to several of the cases cited by Bennett in which the weapons were not discharged at all.

Most importantly, confiscation of the firearm was a critical factor in the resolution of the cases cited by Bennett. Similarly, the Village offered to dispose of Bennett's case by ordering confiscation of the weapon. Bennett rejected this offer. It is apparent that the Village's primary concern in all of these cases, including Bennett's case, was to confiscate the handgun at issue from the Village. Had Bennett complied with the confiscation offer, the prosecution would have ceased.

The court believes the cases cited by Bennett fail to support his claim that he was singled out for prosecution while others similarly situated were not prosecuted. The facts in this case show that Bennett was not similarly situated with any of the other "crime victims" he cites. These other cases show that the Village's past practices of handling Handgun Ordinance violations included pursuing cases in which the handgun owner had used the weapon in a

manner incompatible with self-defense and doing what it must (by agreement if possible) in all handgun cases to rid the Village of the weapon. The manner in which the Village exercised its broad prosecutorial discretion in Bennett's case was not inconsistent with these practices.

It is not relevant whether any Village official was "out to get" Bennett for the embarrassment he had caused the Village due to his outspoken criticism of the Handgun Ordinance. Proof that someone in local government has a vendetta against the one prosecuted, but that the law is being enforced rationally against others, will not get him past the Village's motion for summary judgment. *See Falls v. Town of Dyer*, 875 F.2d 146, 149 (7th Cir.1989). As discussed above, the court believes the Handgun Ordinance is being enforced rationally against others.

Furthermore, there is no constitutional problem with the Village prosecuting Bennett, an individual whose plight has received nationwide publicity, in order to set an example of enforcement of the Handgun Ordinance. "A government legitimately could enforce its laws against a few persons (even just one) to establish a precedent, ultimately leading to widespread compliance." *Falls*, 875 F.2d at 148.

Bennett's outspokenness about the Handgun Ordinance does not bar the Village from prosecuting Bennett for violating the Ordinance. As the Seventh Circuit Court of Appeals has stated

[A] law violator cannot buy immunity from prosecution by coupling his violation with advocacy and then complaining that his advocacy led the government to single him out to prosecute for the violation—even if his speculation about the government's motive is true. (cite omitted.) The government is allowed to get a bigger bang for its buck by concentrating its limited resources on those who flaunt their offenses, since proceedings against them are apt to generate more

publicity and therefore communicate a more effective deterrent than proceedings against the obscure and denying violator.

*White v. Elrod*, 816 F.2d 1172, 1176 (7th Cir.1987). Bennett violated the Handgun Ordinance of the Village. Thus, even if Bennett's protestations against the Ordinance did motivate the Village to prosecute him for the violation, such conduct did not fall outside the prosecutor's extensive discretion.

Bennett has been unable to provide sufficient evidence to create a genuine issue of whether he was singled out from others similarly situated and selectively prosecuted based upon impermissible grounds.

As set out in the discussion of Count I above, the propriety of the pre-prosecution activities alleged in Count I depends upon the propriety of Bennett's prosecution. Since the prosecution of Bennett was not improper, the evidence does not support Bennett's claim that the pre-prosecution activities alleged in Count I were substantially motivated by retaliatory purposes.[3]

### CONCLUSION

Defendants' motion for summary judgment on Counts I and II is GRANTED.

---

**3.** Defendants moved to strike the affidavit of Jim A. Wilson filed as Exhibit 8 to plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment. Since the information contained in the affidavit does not alter the conclusions drawn by the court in its consideration of this summary judgment motion, the motion to strike is moot.