**David TOWNSHEND, Plaintiff,**

v.

**Mark HAZELROTH, Michael Arrowood, Robert H. White, Michael P. McCarthy, James Dowling, Robert Topp, and James S. Berglund, Jointly and Severally, Defendants.**

**Civ. A. No. 93–72013.**

United States District Court,
E.D. Michigan,
Southern Division.

Feb. 3, 1995.

Michael S. Cafferty, Feikens, Vander Male, Stevens, Bellamy & Gilchrist, P.C., Detroit, MI, for David Townshend.

Donald S. McGehee, Michigan Dept. of Atty. Gen., Tort Defense Div., Lansing, MI, for Mark Hazelroth.

## ORDER GRANTING IN PART AND DE-NYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDG-MENT

GADOLA, District Judge.

Plaintiff David Townshend filed this action against defendants Mark Hazelroth, Michael Arrowood, Robert H. White, Michael P. McCarthy, James Dowling, Robert Topp, and James S. Berglund for defamation of character, libel, civil conspiracy and violations of 42 U.S.C. § 1983. Before the court is defendants' motion for summary judgment.[1]

### I. Facts

Until 1989, David Townshend worked for the Michigan State Police as a forensic scientist, specializing in toolmark examination. In 1989, Townshend retired and started a sole proprietorship business through which he offered his forensic services to testify in various trials as a firearms or toolmark expert.

In 1991, Townshend was retained to review evidence in the criminal prosecution of Steven Kado, a trial covered by the newspapers extensively.[2] Steven Kado was accused of killing his wife using a splitting wedge as the murder weapon. Expert witnesses for the prosecution included pathologist Werner Spitz and Ljubisa Jovan Dragovic, two experts who concluded that the marks left on the deceased's body were consistent with those which could have been caused by a wedged tool. Townshend testified for the defense that the wedge could not have made

---

**1.** Defendants filed this motion for summary judgment or in the alternative a motion to dismiss. The court has considered evidence outside the pleadings and therefore will address defendants' motion as a motion for summary judgment.

**2.** Exhibit 2 to defendants' motion for summary judgment includes articles from the following newspapers regarding the Kado trial: (1) *Detroit News,* March 30, 1991; (2) *The Daily Tribune,* March 30, 1991; (3) *The Oakland Press,* March 30, 1991; (4) *The Oakland Press,* April 3, 1991; (5) *The Daily Tribune,* April 2, 1991; (6) *Detroit News,* April 3, 1991; (7) *The Daily Tribune,* April 3, 1991; (8) *Daily Tribune,* April 6, 1991; and (9) *The Macomb Daily,* April 10, 1991. Most of these articles discuss Townshend's testimony in the trial.

the marks on the deceased's body. He received $10,700 for his services on this case. Pathologist Dr. Lawrence Simson also testified that the depression on the victim's skull was not consistent with a wedge. However, Simson did not completely rule out the wedge as a possible tool causing some of the other marks on the victim's skull. No experts were called to rebut the testimony of the defense expert witnesses. Kado was convicted of murder in the first degree.

Defendants Arrowood, Dowling, White, Topp, McCarthy and Berglund are all Michigan State Police firearm and toolmark examiners. They are also members of the Association of Firearm and Toolmark Examiners ("AFTE"). On June 10, 1991 defendant Arrowood filed a complaint against Townshend with the AFTE. Defendants White, McCarthy, Dowling, Topp and Berglund also signed the complaint. The AFTE has been in existence since 1969 and today comprises a membership across the globe of approximately 700 law enforcement personnel. Townshend was a member of the AFTE in 1991 and has remained a member of the AFTE. The AFTE has its own code of ethics. Members agree to follow this code of ethics and consent to the enforcement thereof as part of their membership in the organization. If members violate the standards of ethics in the industry, they are subject to discipline. In July 1991, Townshend heard through a colleague that a complaint had been filed against him with the AFTE. The officials at AFTE sent a copy of the complaint to Townshend on April 1, 1992.

Following are the pertinent parts of the June 10, 1991 letter to AFTE:

It is our contention that Mr. Townshend violated the Code of Ethics by providing testimony which demonstrated a flagrant disregard for accepted "rules of conduct" in that, the testing he conducted, in addition to being without scientific foundation, failed to support his conclusions(s).

The exclusionary conclusion which he reached went beyond the general standards of acceptability and exceeded the practices and procedures generally accepted by the toolmark profession.

Furthermore, his conduct was not an isolated incident or merely an exercise of bad judgment; but rather a disingenuous attempt (utilizing text exemplars, photographs and testimony) to present events in a manner that would lead someone to form inaccurate or improper conclusions.

Townshend argues that each of these allegations is false. He argues that there was nothing improper about the testing techniques which he used and cites to a portion of Berglund's affidavit where Berglund cannot explain the basis for this claim. Townshend also argues that there were no other incidents which defendants have alleged. Berglund and White admit that they did not know of other incidents. Lastly, Townshend argues that defendants cannot show that Townshend engaged in a "disingenuous attempt to present events in a manner that would lead someone to form inaccurate or improper conclusions."

The allegations in an AFTE complaint are intended to be confidential. However, defendants admit that they discussed the content of the complaint with other members of the toolmark profession. Berglund admitted that, even though he received a call from the president of AFTE reminding him of the confidentiality of the matter, he determined that the president's instructions were not binding on his actions.

In accordance with AFTE's provisions, a three-panel ethics committee first investigated and evaluated the complaint for presentation of its findings to the AFTE nine-member board for ultimate determination. The three-panel ethics committee found that Townshend had failed to meet certain provisions of the ethics code. The committee found fault with Townshend's evaluation of scientific methods and materials tested and his conclusions based on the tests performed on dissimilar materials. The committee found fault with Townshend's interpretations of the tests and his ability to evaluate all possible interpretations and present his opinions in an impartial manner. Townshend argues that defendants had failed to inform the committee that the photographs of Townshend's test marks, which defendants had submitted with their ethics complaint, had

been altered. Townshend also argue that defendants failed to provide the AFTE ethics committee with Dr. Simson's testimony supporting Townshend's scientific conclusions. A hearing was held in May of 1993 in Raleigh, North Carolina before the Board of Directors of AFTE during which Townshend was provided with an opportunity to respond to the complaint and present evidence to support his contention that he did not violate the ethics code. After the hearing, the AFTE sent Townshend a letter informing him that the Board of Directors of the AFTE determined that the allegation against him was unfounded. The complaint filed against Townshend was one of the first taken through the whole process with the AFTE.

Defendant Hazelroth was not a signatory to the complaint filed with the AFTE because he was not a member of the AFTE. Hazelroth wrote a letter to the President of the AFTE accusing Townshend or perjury and being the "worst kind of industry whore." Exhibit 1 to plaintiff's response to defendants' motion for summary judgment. On May 16, 1992, defendant Hazelroth made a speech at the Michigan/Ontario Identification Conference at the Dearborn Hyatt Regency Hotel. Townshend alleges that during this speech Hazelroth accused Townshend of being a "paid whore" and perjurer. Defendant Hazelroth, the only defendant who is not a forensic scientist, was the detective from the state police assigned to the *Kado* criminal trial.

On May 13, 1993, Townshend filed this action in this court.[3] On October 27, 1993, Townshend filed a first amended complaint which alleges four counts. Count I alleges a claim for defamation of character based upon statements made by defendant Hazelroth concerning Townshend on May 16, 1992 in front of police officers and firearm and toolmark examiners at a conference.[4] Count II alleges a claim for libel based on defendant Hazelroth's letter submitted to the AFTE in 1991.[5] Count III alleges a claim for civil conspiracy to destroy Townshend's reputation and livelihood.[6] Count IV alleges that defendants violated 42 U.S.C. § 1983 by violating Townshend's First, Fourth, Fifth, Eighth and Fourteenth Amendment rights.[7]

## II. Standard of Review

■ Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citation omitted). The Court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.,*

3. Plaintiff's original complaint alleged seven counts. On May 24, 1993, the court, *sua sponte* dismissed Counts I, II, III, IV, V and VI of the complaint because they alleged state law claims. On June 1, 1993, plaintiff filed an *ex parte* motion seeking relief from the order of dismissal of Counts I, II and VI. These counts alleged defamation, slander and civil conspiracy. The court determined that these counts would be barred in state court under the Michigan statute of limitations. As a result, the court vacated in part its previous order of dismissal as to Counts I, II and VI of plaintiff's complaint and reinstated those counts.

4. This count was Count I in plaintiff's original complaint. It was dismissed pursuant to the court's May 24, 1993 order and then reinstated by the court's October 11, 1993 order.

5. This count was Count II in plaintiff's original complaint. It was dismissed pursuant to the court's May 24, 1993 order and then reinstated by the court's October 11, 1993 order.

6. This count was Count VI in plaintiff's original complaint. It was dismissed pursuant to the court's May 24, 1993 order and then reinstated by the court's October 11, 1993 order.

7. This count was Count VII in plaintiff's original complaint.

369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.,* 749 F.2d 1205, 1210–11 (6th Cir.1984).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.,* 801 F.2d 859, 861 (6th Cir.1986). The initial burden on the movant is not as formidable as some decisions have indicated. The moving party need not produce evidence showing the absence of a genuine issue of material fact; rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg,* 801 F.2d at 861.

To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986),

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted); *see also Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Fed.R.Civ.P. 50(a). *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. Consequently, a nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.,* 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd,* 929 F.2d 701

(6th Cir.1991). The evidence itself need not be the sort admissible at trial. *Ashbrook v. Block,* 917 F.2d 918, 921 (6th Cir.1990). However, the evidence must be more than the nonmovant's own pleadings and affidavits. *Id.*

## III. Analysis

### A. State Law Claims

#### 1. Governmental Immunity to State Claims

Defendants argue that they are immune from the plaintiff's state claims under the governmental immunity act. Governmental immunity is an affirmative defense which must be proven by the defendants. *Patterson v. Kleiman,* 199 Mich.App. 191, 500 N.W.2d 761 (1993). Under the governmental immunity act, Mich.Comp.Laws Ann. § 691.1407(2), a public employee is immune from liability if the employee acts or reasonably believes he or she is acting within the scope of his or her authority, the governmental agency is engaged in the exercise of a governmental function, and the employee's conduct is not grossly negligent. The term "gross negligence" means "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." *Id.* Defendants make no argument in their brief to support the proposition that filing the ethics complaint with the AFTE, an organization separate from the state police department, was within the scope of their employment. Defendant Hazelroth's letter to the AFTE and his statements on May 16, 1992 are also not justified by defendants as being within the scope of his authority and duties as a state employee. Defendants also do not explain how their activities constituted exercise of a governmental function by the police department. Without sufficient factual support, the court cannot find that defendants have met their burden of proving their governmental immunity defense, pursuant to Mich.Comp.Laws Ann. § 691.1407(2).

#### 2. Defamation of Character

Count I of the complaint states a claim for defamation of character based on

the allegedly defamatory speech made by defendant Hazelroth on May 16, 1992, at the Michigan/Ontario Identification Conference at the Dearborn Hyatt Regency Hotel. Defendants provide no argument to support summary judgment on this claim. There remains a factual dispute as to whether Hazelroth's comments were defamatory; therefore, the court will not grant summary judgment on this count.

### 3. Libel

■ Count II of the complaint states a claim for libel based on the letter written by defendant Hazelroth which was submitted to the AFTE. The letter was dated May 29, 1991 and plaintiff does not contest that it was submitted to the AFTE in 1991. The statute of limitations for state defamation law suits is one year. Mich.Comp.Laws.Ann. § 600.5805(7). Plaintiff argues that his claim is not time barred because he did not discover the existence of the letter until January 26, 1993. The statute of limitations is one year from the time of publication even though the person defamed has no knowledge thereof until sometime afterwards. *Hawkins v. Justin,* 109 Mich.App. 743, 311 N.W.2d 465 (1981). Therefore, plaintiff's claim for libel based upon the 1991 letter is barred by the statute of limitations.

In plaintiff's response to defendants' motion for summary judgment, plaintiff argues that this claim is not time barred because defendants republished the letter at later dates. Plaintiff provides no evidence that the letter was republished within a year of the filing of this action. Plaintiff argues that Hazelroth's speech on May 16, 1992 was a republication of the letter; however, plaintiff has not provided evidence of the content of the speech. Further, Hazelroth's speech was a separate act which gave rise to plaintiff's defamation of character claim. Therefore, defendants' motion for summary judgment on this count is granted.

### 4. Civil Conspiracy

■ In Count III, plaintiff alleges that defendants conspired to intentionally publicize false and defamatory statements to destroy his reputation and livelihood.[8] To establish a claim of conspiracy there must be at least some facts which would suggest that the defendants reached an understanding to act illegally. *Myers v. Morris,* 810 F.2d 1437, 1454 (8th Cir.1987), *cert. denied,* 484 U.S. 828, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987). Agreeing to file an ethics complaint because defendants felt that plaintiff's expert testimony fell below the ethical standards of the AFTE may not show a conspiracy. However, the fact that the complaint was one of the few ever filed with AFTE, the fact that Hazelroth made disparaging remarks about Townshend during the 1992 conference, and the fact that defendants discussed the allegations in the complaint with toolmark experts despite the AFTE rule that the complaint be confidential could enable a reasonable jury to determine that defendants agreed to defame Townshend and harm his reputation and livelihood. Townshend also claims that defendant White had animus against him as a result of a firearms examination in which the two disagreed 15 years ago and therefore was part of a conspiracy to defame Townshend. In a conspiracy case, "agreement is rarely out in the open." *Morales v. Vega,* 579 F.2d 677 (1st Cir.1978) (quoting *Ferguson v. Omnimedia, Inc.,* 469 F.2d 194, 198 (1st Cir.1972)). For purposes of summary judgment on a claim of conspiracy, a court must consider that a jury would not believe defendants' testimony of their innocent explanations. *Morales v. Vega,* 579 F.2d 677 (1st Cir.1978). Therefore, the court will not grant summary judgment on this claim.

Defendants argue that if this count is not dismissed as to all defendants then it should at least be dismissed as to defendants White, McCarthy, Dowling and Topp. Defendants argue that only defendants Hazelroth, Arrowood and Berglund took an active role in filing the ethics complaint. White, McCarthy, Dowling and Topp did participate in the

---

8. Townshend has provided affidavits that the ethics complaint was shown to individuals during the 1992 conference where defendant Hazelroth made his allegedly defamatory speech. As a result, the allegedly defamatory statements made in the complaint are not time barred by the Michigan Statute of limitations for defamation claims.

filing of the ethics complaint by signing the complaint. A reasonable jury could find that the act of signing the complaint is sufficient to show that all the defendants participated in the alleged conspiracy.

### 5. Standard for Review of Defamation Claims: Public Figure

 Defendants argue that plaintiff was a limited purpose public figure for the purposes of the *Kado* trial and therefore plaintiff must prove that defendants' statements were made with "actual malice." Townshend injected himself into the public arena when he decided to contract for $10,700 to testify in the well-publicized *Kado* murder trial. The case received much media attention in the Michigan press.[9] The allegedly defamatory statements made by defendants pertain to the testimony Townshend gave in the *Kado* case. An individual can become a public figure for a "limited range of issues." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351, 94 S.Ct. 2997, 3013, 41 L.Ed.2d 789 (1974). Here Townshend voluntarily entered the controversy, intending to influence its outcome. *See Gertz*, 418 U.S. at 345, 94 S.Ct. at 3009–10. Townshend therefore became a public figure on the limited issue of his testimony at the *Kado* trial. Therefore, Townshend must prove that Hazelroth's statements were made with actual malice.

 Defendants argue that no reasonable jury could find that their statements were made with "actual malice." A statement made with "actual malice" is one that is made with knowledge that it is false or with reckless disregard of whether it is true or false. *New York Times Co. v. Sullivan,* 376 U.S. 254, 279, 84 S.Ct. 710, 725–26, 11 L.Ed.2d 686 (1964). Townshend has provided sufficient evidence that defendants may have made knowingly false statements, or statements which recklessly disregarded the truth. Townshend has shown through affidavits that not at least one defendant could not explain why Townshend's testing methods

were unscientific and that two defendants admitted to not knowing of other incidents where Townshend's testimony was questioned. Further, there is no evidence that Townshend committed perjury or disingenuously attempted to mislead the jury in the *Kado* case. Therefore, the court finds that there is a genuine dispute of fact as to whether the defendants made knowingly false statements to defame Townshend.

### B. Section 1983 Claim

#### 1. *Fourteenth and Fifth Amendments* [10]

Townshend's first amended complaint alleges violations of his right to due process, equal protection, and freedom from invasion of privacy under the Fourteenth and Fifth Amendments. The first amended complaint also alleges violations of plaintiff's right to liberty and to pursue happiness under the Constitution of the United States. These claims will be addressed along with the Fourteenth and Fifth Amendment claims.

The Civil Rights Act, 42 U.S.C. § 1983, creates a federal cause of action to redress deprivations, under color of state law, of constitutionally protected property and liberty interests. *Chilingirian v. Boris,* 882 F.2d 200 (6th Cir.1989). Defendants argue that they are entitled to qualified immunity because plaintiff has failed to establish the violation of a constitutional right by failing to allege a property right or liberty interest subject to constitutional protection.[11] *Siegert v. Gilley,* 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991).

 Townshend alleges that defendants' actions injured his reputation and as a result he faced loss of employment opportunities. Injury to reputation in itself is not a protected "liberty" nor "property" interest. *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). In 1991, the Supreme Court expanded upon *Paul v. Davis* and explained there is no loss of a liberty interest even when injury to reputation results in loss

---

**9.** See footnote 2.

**10.** Plaintiff's Fifth Amendment claim is based on the incorporation of the Fifth Amendment through the Fourteenth Amendment.

**11.** Defendants have not argued that they are immune from plaintiff's section 1983 claims because their actions were not taken under color of state law.

of employment. In *Siegert v. Gilley,* 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991), plaintiff was a former government employee who brought an action against a former supervisor alleging that the supervisor, in response to a request for information on plaintiff's job performance, wrote a defamatory letter which deprived plaintiff of a constitutionally protected liberty interest without due process. The Supreme Court held that plaintiff had failed to state a constitutional violation because defamation is not a constitutional violation even when it impairs future employment opportunities. *Id.* at 233, 111 S.Ct. at 1793–94. Similarly, in the instant case, plaintiff's Fourteenth and Fifth Amendment claims are based on impairment of employment opportunities and injury to reputation.

▆▆▆▆▆ Townshend has also failed to allege deprivation of a property interest. In *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the Supreme Court explained that in order for a person to have a property interest in a benefit, he must have more than a "unilateral expectation," he must have "a legitimate claim of entitlement to it." *Id.* at 577, 92 S.Ct. at 2709. In the instant case, Townshend has not shown that he had a claim of entitlement to any specific employment which he was denied as a result of defendants' actions. Even at-will employees do not have a constitutionally recognizable property interest in their continued employment. *Bennett v. Marshall Public Library,* 746 F.Supp. 671, 674 (W.D.Mich.1990). In the instant case, Townshend has not alleged or shown that he was denied a government position. Townshend has not even shown that potential customers have refused to hire him because of the accusations against him. Instead, Townshend alleges that he turned down cases while the investigation against him was proceeding. Turning down cases was Townshend's decision.

Townshend argues that business reputation is a property and liberty interest. He cites the Eleventh Circuit which held that

"business reputation/goodwill is both a property and a liberty interest which is protectable under the scope of Section 1983" and satisfies the " 'stigma plus' requirement of *Paul* for alleging a constitutionally protected property and liberty interest." *Little v. North Miami,* 805 F.2d 962, 969 (11th Cir. 1986). Townshend also cites *Corbitt v. Anderson,* 778 F.2d 1471 (10th Cir.1985), in which the Tenth Circuit found that plaintiff had stated a claim under section 1983 when he alleged that defendant defamed plaintiff and as a result fewer patients were referred to plaintiff.

The court finds Townshend's arguments unpersuasive. Both *Little* and *Corbitt* were decided before *Siegert,* 500 U.S. 226, 111 S.Ct. 1789 (1991), which clearly held that defamation resulting in loss of employment does not constitute constitutional deprivation. Under the holdings in *Siegert, Paul v. Davis,* and *Board of Regents v. Roth,* Townshend has failed to state a constitutionally protected property or liberty interest under the Fifth and Fourteenth Amendments. Therefore, Townshend's claims alleging violations of his right to due process, equal protection, freedom from invasion of privacy and right to liberty and to pursue happiness are dismissed.

### 2. First Amendment [12]

▆▆▆▆ Townshend alleges that defendants filed the ethics complaint against him and made defamatory statements about him to retaliate against Townshend for exercising his First Amendment rights. Plaintiff relies on *Perry v. Sindermann,* 408 U.S. 593, 597, 92 S.Ct. 2694, 2697–98, 33 L.Ed.2d 570 (1972) to support the proposition that when an infringement of First Amendment rights is alleged, the deprivation of property interest is irrelevant. However, the court finds that *Perry* is distinguishable from the instant case. In *Perry,* the plaintiff was a teacher who had been employed under a series of one-year contracts at Odessa Junior College in the Texas state college system. He testified before the Texas legislature and advo-

---

**12.** Plaintiff's First Amendment claim is based on the incorporation of the First Amendment through the Fourteenth Amendment.

cated the elevation of Odessa to four-year status, a position opposed by Odessa's Board of Regents. After the expiration of his one-year contract, the Board of Regents did not offer him a new contract. *Id.* at 594–95, 92 S.Ct. at 2695–96. The Supreme Court stated that "even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely." *Id.* at 597, 92 S.Ct. at 2697. The government may not deny a benefit on the basis that it infringes on a person's interest in freedom of speech. *Id.* In the instant case, Townshend has not shown any governmental benefit or any other benefit which he was denied for an improper reason. Townshend has not provided any documentation that he was denied employment as a result of defendants' actions.

Townshend also argues that defendants deprived him of a liberty interest by retaliating against his exercise of free speech. Most of the cases cited by Townshend for the proposition that defendants' actions were violative of his First Amendment rights involve actions against employers in which plaintiffs allege that employers either discharged, attempted to discharge or failed to promote plaintiffs in retaliation for exercising their First Amendment rights. *See Morales v. Vega,* 579 F.2d 677 (1st Cir.1978) (discharge of employee); *Donahue v. Windsor Locks Bd. of Fire Com'rs,* 834 F.2d 54 (2nd Cir. 1987) (attempt to discharge employee); *Green v. City of Montgomery,* 792 F.Supp. 1238 (M.D.Ala.1992) (adverse employment actions); *Mt. Healthy City Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1976) (refusal to renew contract). This factual scenario is not applicable to the instant action because defendants were not employers of plaintiff. Only two cases cited by plaintiff do not involve an employer's actions against an employee in retaliation against exercising his First Amendment rights. In *Bennett v. Village of Oak Park,* 748 F.Supp. 1329 (N.D.Ill.1990), police retaliated against a plaintiff's exercise of free speech by threatening him to cease exercising his rights. Plaintiff also cites *Little v. City of North Miami,* 805 F.2d 962 (11th Cir.1986), in which the City of North Miami adopted a resolution censuring a law professor after he represented an unpopular cause. In the instant case, defendants allegedly made defamatory statements about Townshend and submitted an ethics complaint to AFTE, a process to which Townshend had agreed to submit when he joined AFTE. Unlike in *Bennett* and *Little,* defendants' allegedly retaliatory actions in the instant case consisted of defamation. Plaintiff has failed to provide the court with any authority that actions of defamation constitute a constitutional violation of First Amendment rights. Defendants, on the other hand, argue that defamation is a tort actionable under the laws of most states but not a constitutional violation, as explained in *Siegert v. Gilley,* 500 U.S. 226, 233, 111 S.Ct. 1789, 1793–94, 114 L.Ed.2d 277 (1991) in the context of a claim of loss of due process. Defendants further argue that these allegedly defamatory remarks did not deprive Townshend of the right to testify. Townshend admits that he has continued to take cases and testify as a toolmark expert. Townshend has not provided any proof that he actually turned down cases other than his own statements. The court finds that under the factual circumstances of this case, plaintiff has failed to establish a violation of his First Amendment rights. As a result, the court will grant summary judgment on Townshend's First Amendment claim.

### 3. *Fourth and Eighth Amendments*

Plaintiff concedes that defendants' conduct does not violate the Fourth or Eighth Amendments. Plaintiff therefore voluntarily dismisses those sections of the complaint alleging Fourth and Eighth Amendment violations.

### *ORDER*

Therefore, it is hereby **ORDERED** that defendants' motion for partial summary judgment on Count II and Count IV of plaintiff's first amended complaint is **GRANTED.**

It is further **ORDERED** that defendants' motion for partial summary judgment on

Counts I and III of plaintiff's first amended complaint is **DENIED.**

**SO ORDERED.**