Charles E. FERGUSON, Plaintiff, Appellant,

v.

OMNIMEDIA, INC., et al., Defendant, Appellee.

No. 72–1239.

United States Court of Appeals, First Circuit.

Heard Oct. 4, 1972.

Decided Nov. 9, 1972.

Geoffrey D. Wyler, Boston, Mass., with whom Sherin & Lodgen, Boston, Mass., was on brief for appellant.

Arthur Brettler, Boston, Mass., for appellee.

Before ALDRICH, McENTEE and CAMPBELL, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

This is an appeal from the district judge's grant of summary judgment for Lisabeth M. Osborne against appellant in the latter's action to recover damages for alleged securities law and state law violations.

Lisabeth is the wife of Buckman A. Osborne, a co-defendant in the original action. Like Buckman and another co-defendant named Allen Gibson, she was a director of OmniMedia, Inc., also an original defendant. While her husband was president, and Gibson was treasurer, of OmniMedia, Lisabeth was its assistant treasurer and secretary. She also owned shares of its stock jointly with her children or as their trustee, though not individually.

The appellant's action, begun in December, 1969, has centered on his two purchases of OmniMedia stock—the first in May and June of 1968, and the second in December, 1968. In both instances, the appellant says that he was induced to purchase the stock as a result

of misrepresentations made in violation of § 10 of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, and SEC Rule 10b–5. (He also asserts a separate cause of action under M.G.L.A. c. 156B § 60, a Massachusetts statute, for damages allegedly arising from the issuance of OmniMedia stock to Gibson and Buckman for unlawful consideration.)

Appellant's claims relating to the second stock purchase have been sustained against both Buckman and Gibson. Summary judgment, from which he has not appealed, was entered against Buckman with respect to those claims on February 9, 1972, the district court having found that there was no genuine issue of fact as to Buckman's having made misstatements in a balance sheet upon which appellant relied. The claim against Gibson arising from the second purchase, as well as other claims against him, were settled and an agreement for judgment entered against him on January 28, 1972. An order of default had earlier been entered against OmniMedia (which is no longer in business, its assets having been seized and sold by creditors).

Throughout the somewhat tortuous course of the proceedings, Lisabeth's involvement has remained ambiguous. Named a defendant from the start, she was mentioned in the original complaint only as having joined with Buckman on November 1, 1968 in the execution, and on November 14, 1968, in the filing with the Secretary of the Commonwealth, of an "Articles of Amendment" to the corporation purporting to increase the number of its authorized shares, and allegedly containing an untrue recitation of a stockholders' vote adopting the Articles.

Later she was included in a new cause of action, added by amendment to the complaint, which charged Buckman, Gibson and her, as officers and directors, with having authorized on June 27, 1968 the issuance of stock to Gibson and Buckman without lawful consideration, purportedly in violation of state law.

Finally, Lisabeth was the subject of a further amendment to the complaint which alleged that she "knew that the representations contained in the balance sheet were untrue and conspired with her husband, Buckman A. Osborne, in the scheme whereby the plaintiff was defrauded in the purchase of stock referred to" in the original complaint.

In summary judgment proceedings relative to the claim against Lisabeth, affidavits were filed both by Lisabeth and Buckman denying that she knew about the fraudulent balance sheet in question, denying any discussions with the appellant about his investments in OmniMedia, and asserting that her sole function was to record at meetings what transpired and that she had no specific knowledge of the consideration paid by anyone for their stock. Buckman, in his affidavit, went on to state that she had "no head for figures", did not participate in the financial affairs of the company, and to his knowledge did not know how to read a financial statement of any type.

The appellant by counter-affidavit asserted that throughout his term of employment with OmniMedia (which the district court has found was from July 1968 to July 1969, the period when Buckman's balance sheet misrepresentations were made), Lisabeth demonstrated through her conversations with him and others that she was fully cognizant and involved in the business events surrounding OmniMedia. She discussed such matters as the corporation's sales and profit picture, the work to which he was assigned, the stock he had purchased, and other facts respecting the business life of OmniMedia.

The district court granted summary judgment for Lisabeth, stating,

"The entire evidence, affidavits as well as deposition testimony, leads to the inescapable conclusion that Mrs. Osborne knew nothing whatsoever about the balance sheet which is the subject of this aspect of the litigation. Plaintiff's affidavit is not sufficient

to raise a genuine issue of material fact on this point. . . .

"At one time, plaintiff also premised federal securities law liability on Mrs. Osborne's involvement in the filing of certain Articles of Amendment with the Secretary of the Commonwealth of Massachusetts. As to this claim, no amendment having been sought, summary judgment is granted on account of plaintiff's pointed omission to plead reliance, an essential element of the claim . . . which plaintiff has consistently pleaded as to all other factual bases of his complaint."

We believe that summary judgment should not have been granted.

We think that Lisabeth has not discharged the burden, incumbent upon a party moving under Rule 56 for summary judgment, of disproving the existence of a genuine issue as to any material fact. In such a motion, all inferences from facts contained in affidavits, exhibits and depositions "must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). Rogen v. Ilikon Corporation, 361 F.2d 260, 266, n. 6 (1st Cir. 1966). "A litigant has a right to a trial where there is the slightest doubt as to the facts." Peckham v. Ronrico Corporation, 171 F.2d 653, 657 (1st Cir. 1948).

While (although we do not pass on the question) there may be little from which to infer Lisabeth's possible liability as a principal in a Rule 10b–5 violation, a number of facts suggest that she may have been implicated with her husband in a conspiracy to violate 10b–5. Such a conspiracy was sufficiently alleged in the pleadings;[1] and despite an early ruling that there is no cause of action for conspiracy under Rule 10b–5 (Citizens Casualty Co. v. Shields, CCH

Securities Law Reporter, ¶ 90, 683 (S.D. N.Y.1954)), it is now well accepted that 10b–5 reaches conspiracies to defraud as well as substantive offenses. *See* cases cited in 2A. Bromberg, Securities Law: Fraud, § 8.5(540), p. 208.29ff.

Lisabeth was an officer and director of OmniMedia at relevant times. During the period in 1968 when her husband and co-director has been found to have defrauded appellant, she demonstrated in conversations (according to appellant's affidavit) knowledge of the business of the corporation and of appellant's stock ownership. She also was present at and recorded the minutes of one or more corporate meetings at which allegedly improper actions were taken. These circumstances give rise to more than a passing inference that she may have known about and participated in any illegal scheme that was afoot to defraud the appellant.

Additionally, Lisabeth's alleged participation in the preparation and filing of articles of amendment containing a false statement, and her alleged acquiescence, as an officer and director, in the issuance of stock to Gibson and her husband without lawful consideration, may possibly be shown to have been overt acts in furtherance of such a conspiracy, whether or not the appellant actually relied upon either or both acts. If Lisabeth took part in a conspiracy, she may be held responsible for the acts of a co-conspirator that actually misled the appellant into buying stock (such as her husband's furnishing of a false balance sheet), even if she herself did not participate in those acts. *See* Dasho v. Susquehanna Corp., 380 F.2d 262, 267, n. 2 (7th Cir. 1967), cert. denied sub nom. Bard v. Dasho, 389 U.S. 977, 88 S.Ct. 480, 19 L.Ed.2d 470 (1967), Hoffman v. Halden, 268 F.2d 280, 295–296 (9th Cir. 1959), overruled on other grounds in Cohen v. Norris, 300 F.2d 24 (9th Cir.

---

1. When we say "sufficiently alleged", we do so in light of the relaxed standards of federal pleading. Conley v. Gibson, 355 U.S. 41, 48, 78 S.Ct. 99, 2 L.Ed.2d 80

(1957). The appellant's articulation of his claims against Lisabeth leaves much to be desired.

1962), Herpich v. Wilder, 430 F.2d 818, 819 (5th Cir. 1970), cert. denied, 401 U. S. 947, 91 S.Ct. 935, 28 L.Ed.2d 230 (1971).

In a conspiracy case, agreement is rarely out in the open, and proof of conscious complicity may depend upon the careful marshalling of circumstantial evidence and the opportunity to cross-examine hostile witnesses. *See* Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). As in the present case, summary judgment procedures are often not a sufficient substitute for trial.

The district court did not in its final grant of summary judgment mention the state law claim (based on Lisabeth's alleged part in issuing stock to Gibson and Buckman for unlawful consideration). In light of our decision, it may wish to consider exercising its pendent jurisdiction over that claim. *See* United Mine Workers v. Gibbs, 383 U.S. 715, 725–727, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

The judgment of the District Court is reversed and the action is remanded for further proceedings consistent with this opinion.