James ZACCAGNINI

v.

Sterling C. MORRIS, James F. Banda, George W. Boylen, Jr., Michael A. Caira, A. Daniel Gillis, James R. Miceli, Paul J. Lynch, James Marsi and George Shepard.

Civ. A. No. 75–5114–Z.

United States District Court,
D. Massachusetts.

Oct. 31, 1979.

Carroll E. Ayers, Curley, Ayers & Curley, Wakefield, Mass., for plaintiff.

Anton T. Moerhke, Jager & Smith, Boston, Mass., for defendants.

## MEMORANDUM OF DECISION

ZOBEL, District Judge.

Plaintiff, formerly a Special Police Officer employed by the town of Wilmington, Massachusetts, seeks damages under 42 U.S.C. § 1983[1] against defendants, various Town officials and members of the police force, alleging that by removing him from his position and publishing a false report of misconduct, in both cases without affording him the opportunity of a hearing, they conspired to deprive him of liberty and property interests without due process of law. The case is before the Court on defendant's motion for summary judgment.

The claim arises from a series of events which culminated in the decision of January 28, 1974 by defendant Morris, Wilmington's town manager, not to reappoint plaintiff as Special Police Officer effective December 31, 1973. The parties agree that the primary reason for the decision was a report of professional misconduct filed by defendant Marsi, then a Wilmington Police Offi-

---

1. Plaintiff asserts jurisdiction under 28 U.S.C. § 1343. In addition to 42 U.S.C. § 1983, plaintiff claims causes of action under 42 U.S.C. § 1985(3), and 28 U.S.C. §§ 2201, 2202.

cer. Defendants concede that the Town's decision was based on erroneous information and that the town denied plaintiff an opportunity to be heard. Defendants do not dispute the fact that the report filed by the Town Police Officer reached other towns. Nonetheless, they contend for various reasons that they are entitled to judgment as a matter of law.

Defendants first argue that under a theory of *res judicata,* a successful libel action[2] brought by plaintiff against Officer Marsi in 1974 precludes this conspiracy action against the town officials and employees. They cite a recent decision of the Court of Appeals for the First Circuit for the proposition that *"[r]es judicata,* when the suit is between the same parties and concerns the same operative nucleus of fact . . . bars issues even if unlitigated." *Lovely v. Laliberte,* 498 F.2d 1261, 1263 (1st Cir. 1974), *cert. denied,* 419 U.S. 1038, 95 S.Ct. 526, 42 L.Ed.2d 316 (1974). It is clear, however, from the pleadings and affidavits in this case that the libel action against Marsi does not share a "common nucleus of fact" with the conspiracy action against the other town officials. The evidence in the instant case must perforce range far beyond the proof of false statements by Marsi and damage to plaintiff's reputation, which constituted the essence of the libel action. There is neither identity of parties nor identity of grounds. There is no possibility that a judgment in the instant case will impair or frustrate the judgment in the libel action, nor is plaintiff seeking a second opportunity to vindicate the same right.[3] Accordingly, defendants' claim of *res judicata* fails.

Defendants further argue that plaintiff enjoys no constitutionally protectible interest in his appointment, so that no claim arising from due process rights is cognizable under 42 U.S.C. § 1983. Defendants rely principally on *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), in which the United States Supreme Court upheld a U.S. District Court's dismissal of a § 1983 claim against defendant police officials whose publication defamed the claimant, and who did not accord the claimant the opportunity for a name-clearing hearing. There the claimant's employment status did not change, and the court determined that defamation alone did not state a claim under § 1983. But the court pointedly acknowledged that defamation, *"with an attendant foreclosure from other employment opportunity . . . ." id.,* at 705–6, 96 S.Ct. at 1163, citing *Cafeteria Workers v. McElroy,* 367 U.S. 886, 898, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1960) (citations therein omitted) (emphasis supplied in *Paul v. Davis, supra*) or *"because of what the government is doing to* [the defamed party]" *id.,* 424 U.S. at 708, 96 S.Ct. at 1164, citing *Wisconsin v. Constantineau,* 400 U.S. 433, 437, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971), (emphasis supplied in *Paul v. Davis, supra*), clearly implicates Constitutional values. *Id.,* 424 U.S. at 705–706, 96 S.Ct. 1155. The official action consequent to defamation, which the court did not find in *Paul v. Davis, supra,* is the heart of plaintiff's claim in the instant case. Defendant's motion for summary judgment is not appropriate in this instance because the defamation occurred in the course of the alleged termination of plaintiff's employment[4], and also—

2. Following the events in question, plaintiff brought an action for libel in the Superior Court of Middlesex County, Massachusetts in which he recovered in 1978 a judgment for damages in the amount of $30,000, which was affirmed by the Commonwealth of Massachusetts Appeals Court in August 1979.

3. See 1B Moore's Federal Practice ¶ 0.410, 1157–8 (1974) and cases set forth in nn. 29–32 therein.

4. Plaintiff alleges that Wilmington's policy was automatically to reappoint Special Police Offi-

cers absent a showing of cause not to reappoint. While nowhere denying plaintiff's claim, defendants assert that appointments are at the pleasure of the Town Manager and that no hearing has ever been accorded to an officer who was not reappointed. The claims are not necessarily contradictory. The question of a *de facto* tenure policy, which plaintiff claims, will require the parties to adduce evidence and may support plaintiff's claim of a protected "property" interest in addition to the "liberty" interest recognized by the court today. See *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

accepting plaintiff's uncontradicted allegation—because defendants circulated the defamation to other government agencies for the purpose of preventing plaintiff's subsequent employment by other towns. The allegation that defendants, without according plaintiff a name-clearing hearing[5], marked him so as to endanger subsequent employment opportunities states a claim under 42 U.S.C. § 1983 because it alleges that state action, without the opportunity of a hearing, "imposed on [plaintiff] a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities", *Paul v. Davis,* 424 U.S. at 709–10, 96 S.Ct. at 1164, citing *Board of Regents v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). *See also Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) *and Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975).

■ Defendants finally argue that summary judgment should be allowed because defendants—or at least those officials who did not take an active role in the alleged conspiracy—enjoy the qualified immunity from liability described by *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).[6] In that case the court determined that "[l]ocal governing bodies [as well as 'local government officials sued in their official capacities', *id.,* 436 U.S., at 690, n. 55, 98 S.Ct. 2018] . . . can be sued directly under § 1983 . . ., [where] the action that is alleged to be unconstitutional implements or executes a . . . decision officially adopted and promulgated by that body's officers." *Ibid.*

■ Defendants correctly observe that "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.,* at 691, 98 S.Ct., at 2036. The officials *can* be liable under § 1983, however, when execution of *their* policy decisions "inflicts the injury [for which] the government as an entity is responsible under § 1983." *Id.,* at 694, 98 S.Ct., at 2038. As such, defendants' motion for summary judgment can succeed only insofar as defendants demonstrate that no contested issue of fact links specific defendants to the alleged conspiracy to deprive plaintiff of a protected interest.

Defendants concede that plaintiff has raised issues of fact with respect to involvement of the author of the report, Officer Marsi, and Town Manager Morris. They contend, however, that by the terms of Wilmington's Town Charter, the exclusive authority to remove police officers is vested in the Town Manager, and that the remaining defendants, Police Chief Lynch, Sergeant Shepard, and the members of the Board of Selectmen, did not have a role in the dismissal nor in the publication of the report. In order to determine whether the allegations of conspiracy against Lynch, Shepard, and the selectmen withstand the motion for summary judgment, it is essential to determine what involvement plaintiff alleges, and on the basis of the parties' affidavits, what evidence could be introduced to support or rebut the alleged involvement.

The parties agree that the only basis for the implication of Lynch, Shepard and the Selectmen is the following: 1) Shepard's consultation on or about December 31, 1973 with Marsi prior to the filing of Marsi's report; 2) a letter of January 8, 1974 from Lynch inviting plaintiff to visit to discuss

---

**5.** See *Board of Regents v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) and especially *id.,* 408 U.S. at 573, n. 13, 92 S.Ct. 2701.

**6.** Although the events at issue took place in 1973 and 1974, the subsequent decision in *Monell v. Dept. of Social Services of City,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) is controlling with respect to defendants' claim of immunity. This court is guided with respect to defendants' claims of immunity by the prevailing construction of law as decreed by the United States Supreme Court at the time the plaintiff's claim is adjudicated. See *Owen v. City of Independence, Mo.,* 560 F.2d 925 (8th Cir. 1977), *vacated and remanded* 438 U.S. 902, 98 S.Ct. 3118, 57 L.Ed.2d 1145 (1978) ("for further consideration in light of *Monell, [supra]", ibid.*) (complaint arose from events taking place in 1972).

the allegations; 3) a written statement of advice on possible Town action from Lynch to Morris; 4) the closed meeting of the Selectmen, Lynch and Morris, in January, 1974, where Marsi's report was referred to Morris, and 5) the fact that the report discussed at that meeting is alleged later to have appeared in the offices of other towns in the region. Neither defendants' nor plaintiff's affidavits make detailed representations about the substance of the conversations at issue[7] ("intraoffice communications"), nor about the distribution of the report outside of Town premises. Plaintiff cites the five events identified above as the only elements of the Town's actions which could involve defendants other than Marsi and Morris. Defendants' affidavits concede that the intraoffice communications took place, and that all defendants participated in at least one intraoffice communication. They do not deny the distribution of Marsi's report. They *do* deny their conspiratorial roles in all events but only do so in sworn unelaborated conclusions of law which do not allege specific facts. As such, defendants' affidavits admit to the presence of all defendants in meetings about the report or about plaintiff's discharge. Only the details of these meetings—about which evidence neither party's affidavits offer specific information—is at issue.

 All defendants participated in at least one discussion of the report. Accepting plaintiff's uncontested allegation, someone in the employ of the Town—presumably one of the defendants—distributed the information from plaintiff's file. As the movants, defendants have the burden of demonstrating that no matters of fact which link defendants to the Town's actions

are at issue. See *Mack v. Cape Elizabeth School Board,* 553 F.2d 720, 722 (1st Cir. 1977). Their conclusory affidavits simply do not do so. Furthermore, summary judgment is inappropriate in this instance because a conspiracy, by the nature of the allegation, treats actions "rarely out in the open", *Ferguson v. Omnimedia, Inc.,* 469 F.2d 194, 198 (1st Cir. 1972), because cross-examination and circumstantial evidence may be necessary to cooper up evidence of the conspiracy, *id.,* 469 F.2d at 197–8; See also *Gual Morales v. Hernandez Vega,* 579 F.2d 677, 680–681 (1st Cir. 1977), and because defendants' states of mind are of central importance, *Poller v. Columbia Broadcasting System,* 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962), *Hahn v. Sargent,* 523 F.2d 461, 468 (1st Cir. 1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 54 (1976). None of defendants have demonstrated that they are outside the scope of § 1983 liability for participation in the conspiracy plaintiff alleges, and they concede that plaintiff was refused a hearing. Accordingly, the motion for summary judgment is denied.

---

7. Shepard's affidavit reports that he listened to Marsi's account of plaintiff's "misconduct" and advised Marsi to file a report. Lynch does not disclose any conversations which preceded his invitation, and his letter to plaintiff is in evidence. Lynch's affidavit reports that shortly after corresponding with plaintiff, Morris advised him that a private investigator would perform the necessary inquiry. Selectmen Banda, Boylen, Miceli, Caira, and Gillis state in separate affidavits but identical language that they "never communicated in any way with

any other defendant in this action for the purpose of preventing James Zaccagnini from being hired . . .," a conclusion which suggests a purpose absent from their conversations, but does not allege facts about the substance. On this critical issue, only the affidavit of defendant Banda differs. His affidavit reports the conclusory statement in addition to a similarly vague statement that the selectmen "did not discuss the merits" of the report, explaining that the decision was to be made by the Town Manager.