Melanie PHILBROOK, Plaintiff,

v.

Douglas PERRIGO, Kenneth Coye, Malden Police Department, City of Malden, Scott Caroll, Richard Correale, Glen Cronin, Robert DiSalvatore, Trent Headley, Brian Killion, George McKay, Joseph Walker and John Doe, Defendants.

Civil Action No. 07–11476–NMG.

United States District Court,
D. Massachusetts.

July 14, 2009.

Andrew J. Brodie, III, Andrew M. Fischer, Jason & Fischer, Boston, MA, for Plaintiff.

Thomas Drechsler, Richard P. Mazzocca, Byrne & Drechsler, L.L.P., Boston, MA, Kathryn M. Fallon, Malden, MA, for Defendants.

### MEMORANDUM & ORDER

GORTON, District Judge.

In this suit over alleged civil rights violations and common law torts arising out of a purported pattern of harassment, intimidation and other misconduct, the defendants, the City of Malden ("the City"), its police department ("the Police Department") and certain Malden police officers, have moved for summary judgment.

### I. *Background*

#### A. **Procedural History**

On August 10, 2007, the plaintiff, Melanie Philbrook ("Philbrook"), filed a com-

plaint against 1) the City; 2) the Police Department; 3) Douglas F. Perrigo ("Captain Perrigo"), in his capacity as Captain of the Police Department's Patrol Division; 4) Kenneth Coye ("Police Chief Coye"), in his capacity as Chief of the Police Department and 5) Malden police officers Scott Caroll ("Caroll"), Richard Correale ("Correale"), Glen Cronin ("Cronin"), Robert DiSalvatore ("DiSalvatore"), Trent Headley ("Headley"), Brian Killion ("Killion"), Joseph Walker ("Walker") and John Doe ("Doe").[1] On September 18, 2007, Philbrook filed an amended complaint apparently making only grammatical and other insignificant changes.

Against DiSalvatore, Headley, Correale and John Doe, Philbrook alleges false arrest (Count I), abuse of process (Count II), malicious prosecution (Count III) and false imprisonment (Count IV). Against all defendants, she alleges invasion of privacy (Count V), intentional infliction of emotional distress (Count VI), violation of civil rights under 42 U.S.C. § 1983 and conspiracy to do the same (Counts VII and IX, respectively), and violation of the Massachusetts Civil Rights Act ("MCRA"), M.G.L. c. 12, § 11I, and conspiracy to do the same (Counts VIII and X, respectively). Against Captain Perrigo, Coye, the Police Department and the City, she also alleges negligent failure to train, supervise and discipline (Count XI) and violation of 42 U.S.C. § 1983 due to the same negligence (Count XII). In their answer, filed on October 10, 2007, the defendants assert 28 affirmative defenses, including qualified immunity, contributory negligence, statute of limitations, *res judicata* and lack of and improper service.

The defendants filed a motion for summary judgment on March 19, 2009, and an

---

1. Apparently, in the complaint, the first name for defendant Cronin incorrectly appears as "Michael" and defendant Caroll's name is misspelled "Carol."

amended version of that motion about one month later. Philbrook has opposed the amended motion. Although she has set forth disputed facts in a concise statement and has not filed a cross-motion, her opposition is based largely on matters of law.

## B. Factual Background

Philbrook claims that beginning in 1999, the defendants engaged in a pattern of harassment against her including following and conducting surveillance of her, asking her inappropriate questions, making statements and threats concerning her private relationships, falsely arresting and imprisoning her, and refusing to investigate alleged officer misconduct.[2]

In particular, Philbrook alleges that Officer Killion obtained a no-trespass order against her boyfriend, Michael Bergin ("Bergin"), with respect to the housing complex in which Philbrook resides. Killion also repeatedly, and on his own initiative, surveilled her residence, hid in her bushes and knocked on her front-door in the hopes of finding Bergin. Killion later began following and approaching Philbrook in public places and making threats against Bergin concerning their relationship. In March, 2003, Killion approached Philbrook in the parking lot of a CVS Pharmacy store, threatening to kill Bergin and warning Philbrook to "watch her back." That kind of conduct allegedly continued despite Philbrook's complaint to the Office of the City Mayor and assurances that Killion had received proper discipline.

In addition, according to Philbrook, the Police Department had an unwritten policy pursuant to which officers were supposed to pull over cars that matched her vehicle type and license number when operated by a male driver. Indeed, on November 8, 2003, Killion arrested Bergin for driving Philbrook's car without a valid driver's license. Killion then issued a civil citation against Philbrook for allowing Bergin to operate her car without a license. Although she was later cleared, Philbrook was unable to recover the towing fees she had been assessed in connection with the citation. On November 10, 2003, and March 1, 2004, she filed formal written complaints to Captain Perrigo but no action was taken was taken with respect to either complaint.

In a similar incident, on February 24, 2004, Officer Caroll pulled Bergin over while he was driving Philbrook's vehicle. Philbrook witnessed that event while she was a passenger in another vehicle nearby. She got out of that vehicle and asked Caroll why he had stopped Bergin. Caroll directed Philbrook to get back into her vehicle. She then asked whether Caroll meant for her to get into her car (then being operated by Bergin) or the car from which she had just emerged. Caroll responded by calling her a "wise bitch."

In yet another incident, on August 12, 2004, officers DiSalvatore, Headley, Correale and Doe pulled over Bergin while he was driving Philbrook's car and performed an inventory search of it. Philbrook, who was down the street at the time, ran toward her car yelling, "Get the f—— away from my car. That's my f car." In response, DiSalvatore arrested her for disorderly conduct. The parties agree that the arrest was made in the City of Everett, just over the border from the City of Malden, but they dispute whether Philbrook was in the City of Malden when she started yelling.

An inventory search of Philbrook's purse was performed at the police station and produced two vicodin pills. While in custo-

---

2. Although the defendants dispute a few of Philbrook's allegations, they have taken them as true for the purposes of their motion for summary judgment.

dy, Philbrook suffered breathing difficulties due to asthma and requested medical attention. Officers, including Cronin, allegedly denied her request and, instead, laughed at her.

Philbrook was charged with disorderly conduct and possession of a Class B substance. The latter charge was eventually withdrawn when it was determined that Philbrook had a valid prescription for the pills. With respect to the disorderly conduct charge, a Middlesex County judge entered a finding of not guilty. While the charges were pending, Walker and other police officers posted Philbrook's booking photograph as a "desktop image" on at least two computers in the police station.

## II. *Analysis*

### A. Legal Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir.1991), quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990). The burden is upon the moving party to show, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor. *O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir.1993). If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.

### B. Application

### 1. False Arrest, Malicious Prosecution and False Imprisonment (Against DiSalvatore, Headley, Correale and Doe) (Counts I, III and IV, respectively)

■ The defendants argue that DiSalvatore, Headley, Correale and Doe cannot be found liable for false arrest, false imprisonment or malicious prosecution because they had probable cause to arrest Philbrook on August 12, 2004. *See* M.G.L. c. 231, § 94A (existence of probable cause to make an arrest is a defense to claims of false arrest or imprisonment); *Chervin v. Travelers Ins. Co.*, 448 Mass. 95, 858 N.E.2d 746 (2006) ("To prevail on a claim for malicious prosecution, a plaintiff must establish that he was damaged because the defendant commenced the original action without probable cause...."). Probable cause requires something more than "bare suspicion" but less than evidence that is needed "to justify conviction," which means essentially "a reasonable likelihood" that a suspect was engaging in criminal activity. *Valente v. Wallace*, 332 F.3d 30, 32 (1st Cir.2003) (citation and internal quotation marks omitted).

The defendants contend that yelling profanities repeatedly "in the presence of onlookers, including children" gave them probable cause to arrest Philbrook for disorderly conduct in violation of M.G.L. c. 272, § 53. That statute permits punishment of, *inter alia,*

> persons who with offensive and disorderly acts or language accost or annoy persons of the opposite sex, lewd, wanton and lascivious persons in speech or behavior, idle and disorderly persons, [and] disturbers of the peace.

The defendants also assert that Massachusetts adopted the definition of "disorderly" set forth in the Model Penal Code stating that

> A person is guilty of disorderly conduct if, with purpose to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (a) engages in fighting or threatening, or in violent or tumultuous behavior; or (b) makes unreasonable noise or offensively coarse utterance, gesture or display, or addresses abusive language to any person present; or (c) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

*Alegata v. Commonwealth,* 353 Mass. 287, 231 N.E.2d 201, 211 (1967) (quoting Model Penal Code § 250.2).

Philbrook correctly responds that Massachusetts courts have clarified and limited that definition, finding criminal convictions based solely on the use of offensive language (with the exception of fighting words) to be unconstitutional under the First Amendment. *See Commonwealth v. Juvenile,* 368 Mass. 580, 334 N.E.2d 617, 622–26 (1975); *see also Commonwealth v. Welch,* 444 Mass. 80, 825 N.E.2d 1005, 1017–20 (2005) (citing *Juvenile* approvingly with respect to offensive language). Indeed, the Massachusetts Supreme Judicial

Court has concluded that subsection (b) of the Model Penal Code's definition of "disorderly" (referring to offensive language) is constitutionally infirm and the disorderly person provision of § 53 should be defined using only subsections (a) and (c). *Commonwealth v. Peace Chou,* 433 Mass. 229, 741 N.E.2d 17, 20 (2001).

■ Because the defendants assert that they arrested Philbrook based only on the fact that she used offensive language, a reasonable jury could conclude that probable cause for the arrest was lacking. Accordingly, summary judgment on Counts I, III and IV is unwarranted.

### 2. Abuse of Process (Against DiSalvatore, Headley, Correale and Doe) (Count II)

■ In Massachusetts, a claim for abuse of process lies where process is used for "an ulterior or illegitimate purpose." *Gutierrez v. Mass. Bay Transp. Auth.,* 437 Mass. 396, 772 N.E.2d 552, 563 (2002). The defendants assert that there is no evidence that DiSalvatore, Headley, Correale and Doe had such a purpose when they filed criminal charges against Philbrook for disorderly conduct following her arrest on August 12, 2004. Philbrook responds that such a purpose could be inferred from 1) the fact that as a matter of well-established law her behavior was not disorderly, 2) as such, the police had the incentive to cover up their wrongful arrest and 3) Philbrook had made numerous complaints to Police Chief Coye against City police officers, thereby giving the defendants the incentive to retaliate against her and/or to seek to prevent her from making additional complaints.

■ Indeed, litigation brought by someone who knows or has reason to know that his or her claim is groundless "tend[s] to show that the process was used for an

ulterior purpose." *Fishman v. Brooks,* 396 Mass. 643, 487 N.E.2d 1377, 1383 (1986). In light of the fact that probable cause to arrest Philbrook for disorderly conduct appears to have been debatable at best and in light of the contentious history between Philbrook and the Police Department, a reasonable jury could find that DiSalvatore, Headley, Correale and Doe had an ulterior purpose in criminally prosecuting Philbrook and summary judgment will not be entered on that issue.

### 3. Invasion of Privacy (Count V)

#### a. Violation of M.G.L. c. 214, § 1B

M.G.L. c. 214, § 1B establishes "a right against unreasonable, substantial or serious interference with [a person's] privacy." That statutory right is

> founded on the idea that individuals may hold close certain manuscripts, private letters, family photographs, or private conduct which is no business of the public and the publicizing of which is, therefore, offensive.

*Cefalu v. Globe Newspaper Co.,* 8 Mass. App.Ct. 71, 391 N.E.2d 935, 939 (1979). Moreover, it protects facts "of a highly personal or intimate nature." *Wagner v. City of Holyoke,* 241 F.Supp.2d 78, 100 (D.Mass.2003) (citation omitted).

The defendants claim that using Philbrook's mug-shot as the "wallpaper" on police computers did not rise to the level of violation of privacy under that statute because it depicted only her face and did not show her in a compromising position. Philbrook responds that the photograph was evidence that she had been arrested and depicted her in a poor light, "crying and obviously upset."

■ The fact of Philbrook's arrest is part of her criminal offender record, and, as such, she should not have had an expectation of privacy in connection therewith.

*See* M.G.L. c. 4, § 7. Furthermore, a mug-shot is not "highly personal," as it is part of the official records of the police. It is, moreover, vastly different from a "family photograph" which is considered to be protected. Although the defendants' conduct was inappropriate, it did not constitute a violation of Philbook's privacy under M.G.L. c. 214, § 1B and summary judgment on that issue is proper. *See Wagner,* 241 F.Supp.2d at 100; *Cefalu,* 391 N.E.2d at 939.

#### b. Violation of the Criminal Offender Record Information Statute

■ The Massachusetts Criminal Offender Record Information statute ("CORI"), M.G.L. c. 6, § 172, restricts public access to criminal offender record information. *See Globe Newspaper Co. v. Police Comm'r of Boston,* 419 Mass. 852, 648 N.E.2d 419, 424 n. 6 (1995). The defendants argue that posting Philbrook's mug-shot on police computers did not violate CORI because the photograph was not disseminated outside of the Police Department. Philbrook contests that fact, contending that the computers were situated such that certain members of the public would have been able to see them. She also asserts that under CORI the defendants are permitted to use her mug-shot only to the extent "necessary for the actual performance of the criminal justice duties" and using it as computer wallpaper does not satisfy that requirement. Because there is a genuine issue of material fact, summary judgment will not enter with respect to the claim pursuant to CORI.

### 4. Violation of Civil Rights under 42 U.S.C. § 1983 (Count VII)

In her complaint, Philbrook alleges numerous civil rights violations, only some of which the defendants address in their motion for summary judgment. The issues

they address involve the plaintiff's arrest, her alleged asthma attack and her claim of invasion of privacy.

### a. The Arrest

Section 1983 of Title 42 of the United States Code protects against the deprivation of rights "secured by the Constitution and laws." Defendants DiSalvatore, Headley, Correale and Doe argue that an arrest made outside policemen's jurisdiction (e.g., an arrest carried out by Malden police in the City of Everett) violates state law and, thus, does not rise to the level of a § 1983 claim. The Court of Appeals for the First Circuit, however, has expressly reserved judgment on that issue. *See Santoni v. Potter*, 369 F.3d 594, 598–99 (1st Cir.2004) (declining to decide "whether an arresting officer's lack of authority under state or federal law to conduct an otherwise constitutionally valid arrest [violates] the Fourth Amendment," thus giving rise to a § 1983 claim).

■ Moreover, a factual dispute exists as to whether Philbrook's arrest was made in violation of state law. The defendants contend that Philbrook began to yell in the City and crossed the line into the neighboring municipality (Everett) as she approached her vehicle. Therefore, they contend that they maintained the power to arrest Philbrook even outside their usual jurisdictional bounds because they were in "fresh and continued pursuit" of her for an offense committed in the City. *See* M.G.L. c. 41, § 98A ("A police officer of a city or town who is empowered to make arrests within a city or town may, on fresh and continued pursuit, exercise such authority in any other city or town for any offence committed in his presence within his jurisdiction...."). Philbrook responds that, to the contrary, she did not start yelling until she had already entered the City of Everett, thereby precluding the defendants from exercising any right associated with a "fresh and continued pursuit." In light of that factual dispute, summary judgment will not be entered.

### b. The Asthma Attack

Defendant Cronin argues that, although Philbrook's complaint describes how she suffered an asthma attack while in custody after her arrest and her request for medical help "was denied" (without specifying who denied her request), no count asserts a cause of action arising out of that allegation. Philbrook responds that 1) her claims of violation of her federal and state civil rights specifically name Cronin, 2) the evidence shows that Cronin denied her request for medical relief and 3) his actions constituted deliberate indifference to the serious medical needs of a prisoner in violation of the Eighth Amendment's protection against cruel and unusual punishment.

Although Cronin's argument may be meritorious, it is insufficient to sustain entry of summary judgment on this count. The proper procedure would have been to move for a more definite statement pursuant to Fed.R.Civ.P. 12(e) earlier in this proceeding. Cronin cannot compensate for his failure to do so by filing a motion for summary judgment. *See Blackwell v. Power Test Corp.*, 540 F.Supp. 802, 813 (D.C.N.J.1981).

### c. Qualified Immunity

■ The defendants contend that, regardless of whether they violated rights protected under 42 U.S.C. § 1983, qualified immunity shields them from any liability. Qualified immunity exists where 1) the plaintiff's allegations make out a violation of a constitutionally protected right, 2) the right was clearly established at the time of the putative violation and 3) a reasonable public official similarly situated to the defendant should have understood

that the challenged act or omission violated a discernible right. *Morelli v. Webster,* 552 F.3d 12, 18 (1st Cir.2009).

### i. Warrantless Arrest

■ With respect to a warrantless arrest, "if the presence of probable cause is arguable or subject to legitimate question, qualified immunity will attach." *Cox v. Hainey,* 391 F.3d 25, 31 (1st Cir.2004). As described above, based on the facts currently before the Court, the defendants did not appear to have probable cause to arrest Philbrook. Accordingly, they are not entitled to qualified immunity with respect to the arrest.

### ii. Invasion of Privacy

The defendants argue that they are entitled to summary judgment on the claim of invasion of Philbrook's right to privacy in violation of the Constitution. In response, Philbrook argues merely that qualified immunity is no shield to her *statutory* claims. Because she does not oppose the application of qualified immunity to any *constitutional* claim of invasion of privacy, summary judgment with respect to that part of Count VII will be entered.

### 5. Conspiracy to Violate Civil Rights under 42 U.S.C. § 1983 (Count IX)

Philbrook alleges that the defendant police officers conspired to intimidate and harass her. The defendants have moved for summary judgment on that issue because conspiracy requires an agreement between two or more individuals and, according to the defendants, the evidence indicates that each officer acted alone in allegedly committing wrongs against Philbrook. In response, Philbrook claims that the evidence suggests a pattern of harassment resulting from "an informal policy of unconstitutional stops." She suggests that her theory is supported by defendant Kil-

lion's directions to Jones to stop her vehicle whenever he saw it being operated by a male and Police Chief Coye's failure to take action in response to her complaints.

■ Conspiracy is often beyond the reach of summary judgment because

agreement is rarely out in the open, and proof of conscious complicity may depend upon the careful marshalling of circumstantial evidence and the opportunity to cross-examine hostile witnesses.

*Ferguson v. Omnimedia, Inc.,* 469 F.2d 194, 198 (1st Cir.1972). A reasonable juror may be able to infer the existence of a conspiracy in this case and, moreover, is better positioned than the Court is at this stage of litigation to undertake such a fact-sensitive analysis. Therefore, this Court will not enter summary judgment on the claim of conspiracy for lack of agreement.

■ Furthermore, the defendants argue that the claim of conspiracy against Killion and Caroll must fail as a matter of law because all allegations with respect to them occurred prior to August, 2004, and, thus, are barred by a three-year statute of limitations. *See Poy v. Boutselis,* 352 F.3d 479, 483 (1st Cir.2003) (statute of limitations for § 1983 claims arising out of personal injury in Massachusetts is three years). Philbrook does not contest the expiration of the three-year limitations period. Rather, she contends that the actions of Killion and Caroll were part of an ongoing pattern of harassment. Philbrook urges the Court to proceed by analogy to employment discrimination cases for which the so-called "continuing violation doctrine" permits prosecution of offenses occurring before the limitations period so long as the claim of discrimination is timely filed. *See O'Rourke v. City of Providence,* 235 F.3d 713, 730 (1st Cir.2001).

As the defendants point out, however, the First Circuit Court of Appeals has expressly provided that

> In the context of a conspiracy to violate civil rights, the statute of limitations runs separately from each action constituting a civil rights violation that causes actual damage to the plaintiff.

*Nieves v. McSweeney,* 73 F.Supp.2d 98, 102 (D.Mass.1999), quoting *Hernandez Jimenez v. Calero Toledo,* 576 F.2d 402, 404 (1st Cir.1978) (emphasis added). Philbrook argues that the First Circuit did not intend that holding to apply to a case such as hers where multiple defendants engage in a "broad and deliberate pattern of harassment." That argument is untenable, however, because the Court of Appeals did not so limit its holding and specifically used general terms. Moreover, it applied that holding to cases involving or contemplating repeated "bad" acts. *See Nieves,* 73 F.Supp.2d at 102 (finding that the statute of limitations had run for the first object of an alleged conspiracy involving an improper arrest but not the second object involving malicious prosecution); *Hernandez Jimenez,* 576 F.2d at 404 n. 1 (noting a situation in which the statute of limitations could be tolled due to the fraudulent concealment of "earlier violations"). Accordingly, the statute of limitations bars Philbrook's claim of conspiracy under 42 U.S.C. § 1983 against defendants Killion and Caroll and summary judgment will be entered in that regard.

### 6. Negligent Failure to Train, Supervise and Discipline under 42 U.S.C. § 1983 (Count XII)

#### a. Captain Perrigo and Police Chief Coye

Under 42 U.S.C. § 1983, a supervisory official may be held liable for the behavior of his or her subordinates only if his or her action is "affirmatively linked," i.e. "led inexorably," to a constitutional violation. *Pineda v. Toomey,* 533 F.3d 50, 54 (1st Cir.2008) (internal quotation marks and brackets omitted). The defendants contend that there is insufficient evidence from which a reasonable jury could conclude that defendants Captain Perrigo and Police Chief Coye were so linked to the constitutional violations alleged to have been committed against Philbrook.

The plaintiff responds that those defendants were aware of, but wholly ignored, multiple complaints she made against defendant Killion and other police officers. In support of their motion, the defendants' proffer that 1) most of the complaints made did not pertain to her but rather to her boyfriend and 2) Captain Perrigo contacted Philbrook in response to her complaints but was informed that her attorney would speak to him which he failed to do. Accordingly, there is a factual dispute as to whether Captain Perrigo and Police Chief Coye ignored Philbrook's complaints and summary judgment with respect to this count is, therefore, unwarranted.

#### b. The Police Department and the City

Under § 1983, a local government may be held liable for injury inflicted by its employees or agents only when the execution of the government's policy or custom inflicts the injury. *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The defendants contend that no policy or custom inflicted the constitutional violations Philbrook alleges to have suffered. Philbrook contends that, to the contrary, the defendants had a policy of stopping her vehicle regardless of whether there was reason to do so and that, subsequently, she was arrested without probable cause. In support

of that argument, she offers the affidavit of Jones who states,

> It is common practice among officers of the Malden Police Department to arrest individuals for no more than using foul language and then charge the individuals with disturbing the peace.

That evidence, in combination with the other evidence surrounding Philbrook's various encounters with the City police, could allow a reasonable jury to find the City and its Police Department liable under § 1983 and, accordingly, summary judgment on that issue will not be entered.

### 7. Violation of MCRA, M.G.L. c. 12, § 11I, Conspiracy to Do the Same, and Negligent Failure to Train, Supervise and Discipline under the Common Law (Counts VIII, X and XI respectively)

The defendants make no specific arguments with respect Philbrook's claims pursuant to the MCRA or common law negligence. Accordingly, they are not entitled to summary judgment on those claims.

### 8. Intentional Infliction of Emotional Distress (Count VI)

■ To establish a claim of intentional infliction of emotional distress, a plaintiff must demonstrate that

> (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community; (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe and of a nature that no reasonable man could be expected to endure it.

*Agis v. Howard Johnson Co.,* 371 Mass. 140, 355 N.E.2d 315, 318–19 (1976) (internal citations and quotation marks omitted). The defendants state in conclusory fashion, without reference to any supporting caselaw, that plaintiff has failed to meet the first and second requirements. Because they have not met their burden of demonstrating that they are entitled to judgment as a matter of law on the emotional distress claim, the Court declines to enter summary judgment in their favor on this count.

### ORDER

In accordance with the foregoing, the defendants' motion for summary judgment (Docket No. 18) is, with respect to 1) the claim pursuant to M.G.L. c. 214, § 1B in Count V, 2) the claim of violation of 42 U.S.C. § 1983 based on the constitutional right to privacy in Count VII and 3) the claims of conspiracy under 42 U.S.C. § 1983 against defendants Scott Caroll and Brian Killion in Count IX, **ALLOWED** but is, in all other respects, **DENIED.**

**So ordered.**